IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TAMMY WATKINS,                              3:11-CV-00903-BR

       Plaintiff,

                             OPINION AND ORDER

v.

MICHAEL J. ASTRUE,
Commissioner of Social
Security,

       Defendant.

KAREN STOLZBERG
11830 S.W. Kerr Pkwy
Lake Oswego, OR 97035
(503) 200-2718

       Attorney for Plaintiff

S. AMANDA MARSHALL
United States Attorney
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003

**DAVID MORADO**
Regional Chief Counsel
**DAVID J. BURDETT**
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Ave., Suite 2900
Seattle, WA 98104
(206) 615-2531

　　　　Attorneys for Defendant

**BROWN, Judge.**

　　　Plaintiff Tammy A. Watkins seeks judicial review of the
final decision of the Commissioner of the Social Security
Administration in which the Commissioner denies Plaintiff's
applications for Disability Insurance Benefits (DIB) pursuant to
Title II of the Social Security Act, 42 U.S.C. §§ 401-34, and
Supplemental Security Income (SSI) pursuant to Title XVI of the
Social Security Act, 42 U.S.C. §§ 1381-83f.  This Court has
jurisdiction to review the Commissioner's final decision pursuant
to 42 U.S.C. § 405(g).

　　　For the reasons that follow, the Court **REVERSES** the decision
of the Commissioner and **REMANDS** this matter to the Commissioner
for further administrative proceedings as set forth below.


　　　　　　　　　　**ADMINISTRATIVE HISTORY**

　　　Plaintiff applied for DIB and SSI on August 27, 2008,
alleging she has been disabled since that time because of

2  - OPINION AND ORDER

Obsessive Compulsive Disorder (OCD), Attention Deficit Disorder (ADD), anxiety, and chronic insomnia.  Tr. 154-55.  Plaintiff's applications were denied initially on October 6, 2009, and on reconsideration on March 23, 2007.  Tr. 68-69, 81-86.

On July 21, 2010, the ALJ held a hearing on Plaintiff's DIB and SSI applications.  Plaintiff and a vocational expert (VE) testified at the hearing.  Tr. 36-67.

On August 6, 2010, the ALJ issued a decision that Plaintiff is not disabled and, therefore, is not entitled to DIB or SSI. Tr. 21-30.

On June 18, 2011, the Appeals Council denied Plaintiff's request for review.  Tr. 1-6.  Accordingly, the ALJ's August 6, 2010, decision was the final decision of the Commissioner. Tr. 13-15.

On June 28, 2011, Plaintiff filed her Complaint in this Court seeking review of the Commissioner's final decision.

### BACKGROUND

**I.**  **Plaintiff's Testimony**.

As of the July 21, 2010, hearing, Plaintiff was 34 years old.  Tr. 37.  She was last employed as a bartender and cocktail waitress for almost three years until August 2008.  Tr. 40, 230. She quit the job because of severe anxiety, nausea, stomach aches, and occasional diarrhea, which caused her to leave work

early at least once a week toward the end of her employment.  She
experienced such anxiety for ten years.  Tr. 40-41.  She usually
was scheduled to work only eight days each month and frequently
missed one or two of those days.  Tr. 43.  Even so, on those
days when she was unable to find a replacement at work, she
experienced increased stomach problems, including constant pain
that worsened when she ate.  Tr. 44.

Plaintiff has chronic diarrhea but she only has bowel
movements one day a week when she spends "a couple of hours a
day" in the bathroom.  Tr. 45.  She has sought treatment, but she
has been told "everything seemed fine."  Tr. 48.

Worrying a lot about her health impedes her ability to
concentrate.  Tr. 48.  Ever since she was eight years old,
Plaintiff has pulled out her hair and eyelashes when she becomes
anxious.  Tr. 44.  In addition, Plaintiff does not read because
she is unable to retain information.  Tr. 48.  Before she
recently moved in with her parents, Plaintiff spent so much time
worrying about living alone that she was unable to watch
television.  Tr. 49.  In the past five years Plaintiff has
experienced difficulty sleeping, sometimes going without sleep
for three days and then sleeping up to 11 hours at a time.
Tr. 46-50.

Since 2008 Plaintiff has lacked the attention span to watch
movies.  Tr. 50.  Any commotion, noise, or visits with family

4  - OPINION AND ORDER

members trigger her anxiety and make her sick, nervous, and lacking in energy. Tr. 51. At those times she stays in her room like a hermit and avoids everyone. Tr. 51. When she loses her patience with people, she flails, yells, and gives them dirty looks. Tr. 52. Because she dislikes dealing with people, she does her grocery shopping late in the day just before the store closes. Tr. 53.

Plaintiff now has fewer doctors' appointments than she did two years ago when she stopped working. Tr. 54. Before she stopped working, she was seeing a doctor three times a week. Tr. 54. She remains worried, anxious, and nauseous resulting in lack of sleep about "80 per cent of the time" and suffers from stomach problems and nausea. Tr. 55. Although she feels "depressed, worthless, [and] guilty" every day, she does not have any thoughts of suicide. Tr. 55-56.

Plaintiff is prescribed Effexor to treat her depression and anxiety and Amitriptyline to help her sleep. Tr. 56. She also sees Clinical Psychologist Kimberley Schlievert, Ph.D., with whom she feels comfortable and who has been helpful by listening to her. Tr. 57. Dr. Schlievert told Plaintiff that "it took [Plaintiff] a long time to basically get as screwed up as [she is,] . . . and it's going to take a long time to undo it." Tr. 57. Prescribed medications help and Plaintiff's "thoughts

aren't racing as much as they used to," but her anxiety "is still an issue."  Tr. 58.

## II.  __Lay-Witness Evidence__.

Plaintiff's mother submitted a report in which she confirmed Plaintiff lives in her mother's home.  Tr. 185.  Plaintiff is "very depressed" and lays around the house eating and occasionally watching "some T.V."  She is obsessed with removing her hair, eyelashes, and eyebrows, and she suffers from "severe nervousness and trouble sleeping."  Tr. 185.  Since the onset of her illness, Plaintiff has been unable to work or to participate in family outings or gatherings.  Tr. 186.  She does not prepare meals or do any work around the home, and she seldom goes out. Tr. 187-88.  Plaintiff's impairments affect her ability to lift, to talk, to remember things, to concentrate on and to complete tasks, to understand and to follow written instructions, and to get along with others.  Tr. 190.  She understands oral instructions more clearly than written instructions.  Tr. 190. She is unable to interact with authority figures who are "harsh." Tr. 191.  She handles stress "very bad[ly]" and "just goes to bed."  Tr. 191.  She is fearful of health issues, being alone at night, someone breaking into the house, and going anywhere.  Tr. 191.

### III. **Medical Evidence**.

#### A.   **Medical Treatment**.

##### 1.   **Hawthorne Family Medicine**.

In July 2008 Plaintiff complained of insomnia after over-the-counter sleep medications were ineffective.  Tr. 239. She also complained of severe anxiety, which had been a problem for most of her life.  She also worried she might have Attention Deficit Hyperactivity Disorder (ADHD).  Tr. 239.  She was diagnosed with Insomnia, Anxiety Disorder, Trichotillomania (a compulsive urge to pull out body hair), and possible Somatoform Disorder.  Tr. 539.

In September 2008 Plaintiff continued to complain about severe anxiety, and she doubted Lexapro, her prescribed medication, was helping her.  Tr. 235.

##### 2.   **Adventist Medical Center**.

In January 2009 Plaintiff was voluntarily admitted to the hospital for four days to treat depression.  Tr. 292-96.  She was diagnosed with Major Depression and Mixed Personality Disorder NOS and assigned a GAF[1] of 40 (major impairment in

---

[1] The GAF scale is used to report a clinician's judgment of the patient's overall level of functioning on a scale of 1 to 100.  A GAF of 41-50 indicates serious symptoms (suicidal ideation, severe obsessional rituals frequent shoplifting) or any serious impairment in social, occupational, or school functioning (*e.g.*, few friends, unable to keep a job).  *Diagnostic and Statistical Manual of Mental Disorders IV* (DSM-IV) 31-34 (4th ed. 2000).

several areas, such as work). Tr. 296. When she was discharged, her GAF had improved to 60 (moderate difficulty in social, occupational, and school functioning). Tr. 293.

### 3. Western Psychological and Counseling Services.

In September 2008 Plaintiff began being treated for excessive anxiety, fatigue, feeling on edge, insomnia, loss of concentration, irritability, loss of concentration, and fear of abandonment. Tr. 25. At that time Certified Alcohol and Drug Abuse Counselor (CADC) Sarah J. Heaverlo assigned Plaintiff a GAF score of 50 (serious impairment in social, occupational, or school functioning). Tr. 254.

In November 2008 Plaintiff's diagnoses included Post-Traumatic Stress Disorder (PTSD), Generalized Anxiety Disorder, Social Phobia, and Trichotillomania. Psychiatric Nurse and Mental Health Nurse Practitioner (PMHNP) Anna Cox, assigned Plaintiff a GAF score of 35 (major impairment in work, school, or family relations). PMHNP Cox found Plaintiff's prognosis to be guarded, and she recommended further treatment. Tr. 255-58.

In February 2009 PMHNP Lori Popeski noted Plaintiff was cooperative but depressed and somewhat anxious. PMHNP Popeski's diagnoses of Plaintiff's condition were the same as those of PMHNP Cox in November 2008, but she found Plaintiff's GAF score had improved to 51 (moderate difficulty in social, occupational, or school functioning). Tr. 406-08.

Dr. Schlievert began treating Plaintiff in February 2009 and found Plaintiff was anxious with a flat affect and depressed mood.  Tr. 316.  Two weeks later Plaintiff was more insightful, smiling and joking, with a brighter affect.  Her impulse control was improving and her GAF was 60 (moderate difficulty in social, occupational, or school functioning).

Dr. Schlievert also treated Plaintiff in March 2009 and found Plaintiff's GAF had improved to 65 (mild symptoms or some difficulty in social, occupational, or school functioning).  Tr. 313.

In April 2009 Dr. Schlievert noted Plaintiff had missed scheduled appointments on three occasions and had two other "late" cancellations.  Tr. 311.  During the same time-frame, PMHNP Popeski noted "some malingering" because Plaintiff's complaint as to anxiety was "somewhat noncongruent with her "stable" mood.  Tr. 402.

In July 2010 Dr. Schlievert answered a questionnaire from the Social Security Administration regarding Plaintiff's mental functioning.  Dr. Schlievert diagnosed Plaintiff with PTSD; Major Depression, severe, with psychosis; Panic Disorder with Agoraphobia; and OCD.  Dr. Schlievert reported Plaintiff's abilities to understand, to remember, and to carry out simple instructions; to maintain regular attendance and to be punctual; to sustain an ordinary routine without any supervision; to work

9  - OPINION AND ORDER

and get along with co-workers; to complete a normal workday
without psychologically-based interruptions; to accept
instruction from supervisors; to make simple work-related
decisions; and to respond appropriately to changes in a routine
work setting were, at best, "poor."  Accordingly, Dr. Schlievert
opined Plaintiff was markedly restricted in activities of daily
living; had extreme difficulty maintaining social functioning and
concentration, persistence, and pace; and was likely to
experience four or more episodes of decompensation lasting at
least two weeks or more during a 12-month period.  Tr. 474-78.

### B.   **Psychological Evidence**.

In December 2008 Clinical Psychologist Kim Goodale,
Psy.D, examined Plaintiff on behalf of the Commissioner and
diagnosed Plaintiff with Generalized Anxiety Disorder and
Trichotillomania.  Dr. Goodale did not address Plaintiff's
functional limitations or opine as to Plaintiff's ability to
engage in substantial gainful activity.  Dr. Goodale, however,
noted "some evidence for mild lapses in attention and
concentration."  Tr. 258-63.

### C.   **Medical/Psychological Consultation Evidence**.

In December 2008 J. Posner, M.D.; MaryAnn Westfall,
M.D.; and Joshua J. Boyd, Ph.D., reviewed Plaintiff's medical
records at the Commissioner's request.  Dr. Posner opined
Plaintiff is moderately limited in her ability to maintain

attention and concentration for extended periods, to complete a
normal workday and workweek without interruptions, to perform at
a consistent pace, and to interact appropriately with the general
public.  Dr. Posner found Plaintiff's anxiety and ADD are severe
impairments.

Dr. Boyd concurred with Dr. Posner that Plaintiff has
moderate limitations in maintaining concentration and dealing
with the general public.  Tr. 304.

Dr. Westfall concluded Plaintiff does not have any
severe physical limitations.  Tr. 309.

**IV.  <u>VE Testimony</u>.**

The VE testified Plaintiff could not perform her past
relevant work as a daycare worker, child monitor, sales clerk,
or bartender/waitress if she was limited to simple work without
any public interaction and only occasional interaction with
co-workers not involving teamwork.  Tr. 59-60.

Plaintiff, however, would be able to perform the unskilled
light jobs of cafeteria attendant and motel cleaner and the
unskilled medium job of counter-supply worker, which are all
available in significant numbers in the national and Oregon
economy.  Tr. 62-63.  The VE testified if Plaintiff were to miss
one day of work a week and/or was able to maintain concentration
for only 80% of the workday, she would be unable to retain
competitive employment.  Tr. 63, 65.

11 - OPINION AND ORDER

## STANDARDS

The initial burden of proof is on the claimant to establish disability. *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005). To meet this burden, a claimant must prove her inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner bears the burden of developing the record. *Reed v. Massanari*, 270 F.3d 838, 841 (9th Cir. 2001).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). *See also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)(internal quotations omitted).

The ALJ is responsible for determining credibility and resolving conflicts and ambiguities in the medical evidence. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Robbins,* 466 F.3d

at 882.  The Commissioner's decision must be upheld even if
the evidence is susceptible to more than one rational
interpretation.  *Webb v. Barnhart*, 433 F.3d 683, 689 (9th Cir.
2005).  The court may not substitute its judgment for that of
the Commissioner.  *Widmark v. Barnhart*, 454 F.3d 1063, 1070
(9th Cir. 2006).

## DISABILITY ANALYSIS

### The Regulatory Sequential Evaluation

The Commissioner has developed a five-step sequential
inquiry to determine whether a claimant is disabled within
the meaning of the Act.  *Parra v. Astrue*, 481 F.3d 742, 746
(9th Cir. 2007).  *See also* 20 C.F.R. § 404.1521; 20 C.F.R.
§ 416.1520.  Each step is potentially dispositive.

In Step One, the claimant is not disabled if the
Commissioner determines the claimant is engaged in substantial
gainful activity.  *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d
1050, 1052 (9th Cir. 2006).  *See* 20 C.F.R. § 416.920(a)(4)(I);
20 C.F.R. § 404.1520 (a)(4)(I).

In Step Two, the claimant is not disabled if the
Commissioner determines the claimant does not have any medically
severe impairment or combination of impairments.  *Stout*,
454 F.3d at 1052.  *See* 20 C.F.R. 20 C.F.R. § 416.920(a)(4)(ii);
404.1620(a)(4)(ii).

In Step Three, the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the Listed Impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. § 416. 920(a)(4)(iii); 20 C.F.R. §404.1520(d). Criteria for listed impairments known as Listings are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, he must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations. 20 C.F.R. § 404.1520(e). *See also* Social Security Ruling (SSR) 96-8p. "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule." SSR 96-8p, at *1. In other words, the Social Security Act does not require complete incapacity to be disabled. *Smolen v. Chater*, 80 F.3d 1273, 1284 n.7 (9th Cir. 1996). Assessment of a claimant's RFC is at the heart of Steps Four and Five of the sequential analysis engaged in by the ALJ when determining whether a claimant can still work despite severe medical impairments. An improper evaluation of the claimant's ability to perform specific work-related functions "could make the difference between a finding of 'disabled' and

'not disabled.'" SSR 96-8p, at *4.

In Step Four, the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work she has done in the past. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. § 404.1520(a)(4)(iv).

If the Commissioner reaches Step Five, he must determine whether the claimant is able to do any other work that exists in the national economy. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. § 404.1520(a)(4)(v).

Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1).

## THE ALJ'S FINDINGS

In Step One, the ALJ found Plaintiff has not engaged in substantial gainful activity since August 27, 2008, the alleged onset date of her disability. Tr. 23.

In Step Two, the ALJ found Plaintiff at all material times has had severe psychological impairments of Depression,

15 - OPINION AND ORDER

Personality Disorder, and Post-Traumatic Stress Disorder (PTSD).
Tr. 23.

In Step Three, the ALJ found Plaintiff's impairments do not
meet or equal any listed impairment. The ALJ found Plaintiff has
the RFC to perform a full range of work at all exertional levels.
The ALJ, however, found Plaintiff has nonexertional job
limitations that enable her to follow only simple instructions
and to carry out only simple tasks with no public interaction and
only occasional interaction with co-workers (*i.e.,* no teamwork).
Tr. 25.

Based on these findings, the ALJ concluded Plaintiff was
unable to perform her past relevant work as a daycare/child
monitor, nurse assistant, sales clerk, bartender, and waitress.
Tr. 28.

At Step Four, the ALJ found jobs exist in significant
numbers in the national economy that Plaintiff is able to
perform, such as cafeteria attendant/bus person and hotel/motel
cleaner. Tr. 29.

Accordingly, the ALJ found Plaintiff is not disabled and,
therefore, is not entitled to benefits. Tr. 30.


## **DISCUSSION**

Plaintiff contends the ALJ erred by (1) failing to credit
Plaintiff's testimony as to the intensity, persistence, and

limiting effects of her psychological impairments; (2) failing
to give germane reasons for not crediting the lay evidence
offered by Plaintiff's mother; (3) failing to credit the expert
opinions of mental-health treatment providers; (4) failing to
find Plaintiff's anxiety disorder is a severe impairment; and
(5) failing to provide a complete hypothetical to the VE that
included Plaintiff's psychological impairments.

## I.   **Plaintiff's Credibility**.

Plaintiff contends the ALJ erred because he did not give
clear and convincing reasons for finding Plaintiff's testimony
was not credible.  The Commissioner, however, argues the ALJ
properly found Plaintiff's testimony was not credible based on
the medical evidence and additional evidence that established she
was malingering.

The ALJ found Plaintiff's testimony regarding the intensity,
persistence, and limiting effects of her mental-health symptoms
not credible because medical records reflect Plaintiff had fewer
limitations than she testified to, she did not take medications
as prescribed, she frequently cancelled or failed to appear at
therapy sessions, she adjusted her medications without a doctor's
approval, and she was found on one occasion to be malingering by
a treating nurse practitioner.  Tr. 26.

### A.   **Standards**.

In *Cotton v. Bowen,* 799 F.2d 1403, 1407 (9th Cir. 1986), the

Ninth Circuit established two requirements for a claimant to
present credible symptom testimony:  The claimant must produce
objective medical evidence of an impairment or impairments, and
she must show the impairment or combination of impairments could
reasonably be expected to produce some degree of symptom.  The
claimant, however, need not produce objective medical evidence of
the actual symptoms or their severity.  *Smolen,* 80 F.3d at 1284.
If the claimant satisfies the above test and there is not any
affirmative evidence of malingering, the ALJ can reject the
claimant's pain testimony only if he provides clear and
convincing reasons for doing so.  *Parra v. Astrue,* 481 F.3d 742,
750 (9th Cir. 2007)(citing *Lester,* 81 F.3d at 834)).  General
assertions that the claimant's testimony is not credible are
insufficient.  *Id.*  The ALJ must specifically identify the
testimony that is not credible and the evidence that undermines
the claimant's complaints.  *Parra,* 481 F.3d at 750 (quoting
*Lester,* 81 F.3d at 834).

    **B.  Analysis.**

    The issue is whether Plaintiff's medical treatment records
when considered as a whole support the ALJ's finding that
Plaintiff's testimony as to the severity of her psychological
impairments was not credible.

    Plaintiff's disability claim rests on her psychological
impairments.  Although the ALJ appears to rely on medical

18 - OPINION AND ORDER

evidence that Plaintiff was "malingering," the medical records contain only a single reference to "malingering," which was made by PMHNP Popeski after Plaintiff had missed several appointments. When read as a whole, however, the medical record clearly establishes Plaintiff suffers from severe mental impairments related to her uncontested conditions of Depression, Personality Disorder, and PTSD.  In fact, the ALJ specifically found at Step Two that Plaintiff suffered from those severe mental impairments. Nevertheless, the ALJ points out that Plaintiff made a trip to New York to visit a friend "during her alleged period of disability," and the Commissioner asserts without further elaboration that the trip was "a strange choice for a person who claims to be disabled by anxiety brought on by noise and commotion."  In light of the medical evidence as a whole, the Court finds evidence of this single trip is insufficient to establish that Plaintiff was malingering or to establish that Plaintiff's testimony was not credible regarding her inability to engage in substantial gainful activity on a continuing basis because of her mental impairments.

Thus, the Court finds on this record that the ALJ erred when he gave little weight to Plaintiff's testimony because the ALJ did not provide legally sufficient reasons supported by evidence in the record for doing so.

## II.  **Lay-Witness Credibility**.

Plaintiff contends the ALJ erred by not crediting the testimony of Plaintiff's mother.  The ALJ, however, accepted as true the lay evidence submitted by Plaintiff's mother, but the ALJ gave those statements little weight and found they did not establish that Plaintiff was disabled.

### A.  **Standards**.

Lay-witness testimony as to a claimant's symptoms "is competent evidence that an ALJ must take into account" unless he "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).

### B.  **Analysis**.

As noted, the statements of Plaintiff's mother, accepted as true by the ALJ, reflect Plaintiff lays around the house eating and watching television; is obsessed with removing her hair, eyelashes, and eyebrows; is nervous; has trouble sleeping; does not prepare meals or do any work around the home; and, finally, has difficulty remembering things, finishing tasks, understanding and following written instructions, and getting along with others.

The Court finds on this record that the ALJ did not err when he considered and accepted the lay-witness statements of Plaintiff's mother as to Plaintiff's daily activities.  The

Court, however, notes the lay-witness evidence is consistent with the medical evidence of Plaintiff's psychological impairments. Accordingly, the Court concludes the ALJ erred when he gave "little weight" to the testimony of Plaintiff's mother because he failed to provide legally sufficient reasons for doing so.

### III.  **Opinions of Dr. Schlievert and PMHNP Cox.**

Plaintiff contends the ALJ did not give "legally adequate reasons for rejecting the July 2010, opinion of Dr. Schlievert and the November 2008 opinion of PMHNP Cox regarding Plaintiff's workplace limitations in light of her mental psychological impairments.

#### A.  **Standards**.

An ALJ may reject the uncontroverted opinion of a treating physician by providing clear and convincing reasons that are supported by substantial evidence in the record.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)(as amended).  An ALJ also may disregard the controverted opinion of a treating physician by setting forth specific and legitimate reasons that are supported by substantial evidence in the record for doing so. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).

The Commissioner may consider evidence from sources who are not "acceptable medical sources" (such as nurse practitioners and chiropractors) "to show the severity of [an

impairment] and how it affects [a claimant's] ability to work."
20 C.F.R. § 404.1513(d).

### B. __Analysis__.

The ALJ gave little weight to Dr. Schlievert's July 2010
opinion that Plaintiff would have a "marked restriction in
activities of daily living" and "extreme difficulties in
maintaining social functioning, as well as concentration,
persistence, and pace."  The ALJ found Dr. Schlievert's opinion
was inconsistent with his contemporaneous treatment notes in
March and April 2009 and with Plaintiff's activities of daily
living at the time, which reflected Plaintiff's symptoms relating
to her psychological impairments were mild.  Tr. 27.

In addition, when making the determination that Plaintiff is
not disabled, the ALJ relied on the December 2008 opinion of
examining physician Dr. Goodale, who found Plaintiff's only
functional limitation was a mild lapse in attention and
concentration.

The Court notes the ALJ did not address PMHNP Cox's November
2008 opinion in which she assigned Plaintiff a GAF score of 35
reflecting a major impairment in occupational functioning.
Although PMHNP Cox's opinion is consistent with Dr. Schlievert's
July 2010 opinion, it is inconsistent with Dr. Schlievert's March
2009 opinion.  The Court also notes the GAF score of 35 assigned
to Plaintiff by PMHNP Cox is sandwiched between higher GAF scores

of 50 and 51 assigned respectively by CADC Heaverlo in September 2008 and PMHNP Popeski in February 2009.

Considering this somewhat confusing medical record, the Court agrees with the ALJ that Dr. Schlievert's opinion as to Plaintiff's capabilities in March 2009 when Dr. Schlievert was treating Plaintiff would likely be a more reliable indicator of Plaintiff's mental health during the relevant time-frame than Dr. Schlievert's subsequent July 2010 opinion of Plaintiff's capabilities offered more than a year after he had stopped treating Plaintiff.  The Court also notes the record does not reflect whether there was any significant change in Plaintiff's mental health during the interim period that might account for such a dramatic change in her GAF scores.

The ALJ appropriately questioned Dr. Schlievert's markedly different opinions as to the severity of Plaintiff's psychological impairments and the apparent and significant conflict in Dr. Schliever's opinions as to the degree of Plaintiff's mental impairments between March 2009 and July 2010.

Instead of rejecting Dr. Schlievert's opinions, however, the Court finds clarification is necessary to determine whether Plaintiff is disabled in light of the medical record as a whole.

**IV.   <u>Severity of Plaintiff's Anxiety Disorder</u>.**

Plaintiff contends the ALJ erred by not specifically finding that Plaintiff's anxiety disorder is a severe impairment.  The

ALJ, however, found Plaintiff's other psychological impairments,
(*i.e.,* Depression, Personality Disorder, and Post-Traumatic
Stress Disorder) are severe, and, therefore, any error in not
finding Plaintiff's anxiety disorder to be severe is not
prejudicial to Plaintiff because the ALJ engaged in further
analysis at Step Four regarding Plaintiff's work-related
limitations arising from all of her impairments whether severe or
nonsevere.  *See Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir.
2005).  *See also* SSR 96-8P, at *5 (when assessing a plaintiff's
RFC, the adjudicator must consider limitations and restrictions
imposed by all of an individual's impairments, including those
that are not "severe.").

On this record the Court concludes the ALJ's assessment of
Plaintiff's RFC included limitations related to all of
Plaintiff's psychological impairments, whether severe or
nonsevere.  Accordingly, even if the ALJ erred by not finding
Plaintiff's anxiety disorder is severe, the error was harmless.

**V.    Hypothetical to the VE.**

Plaintiff argues the hypothetical posed by the ALJ to the
VE does not include all of Plaintiff's limitations set forth
in Dr. Schlievert's June 2010 opinion submitted in response to
the questionnaire of Plaintiff's counsel.

As noted, the Court concludes clarification is needed from
Dr. Schlievert to resolve the apparent and significant contra-

24 - OPINION AND ORDER

diction between the medical evidence presented in his chart notes written at or near the time of his treatment of Plaintiff and his disability opinion offered a year later.  Depending on Dr. Schlievert's clarification of the basis for his opinion and elaboration on the reasons for the difference between his March 2009 and June 2010 opinions, it may be necessary to pose a new hypothetical to the VE to evaluate properly whether Plaintiff is able to work.

### REMAND

The decision whether to remand for further proceedings or the immediate payment of benefits is within the discretion of the court.  *Harman v. Apfel,* 211 F.3d 1172, 1178 (9th Cir. 2000).  "If additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded."  *Lewin v. Schweiker,* 6544 F.2d 631, 635 (9th Cir. 1981).  If, however, "a rehearing would simply delay receipt of benefits, reversal is appropriate."  *Id.*

The Court has concluded clarification is needed from Dr. Schlievert, one of Plaintiff's primary treating physicians, to resolve the contradiction and/or ambiguity between his opinion and medical chart notes written at or near the time of his

treatment of Plaintiff and his opinion assessing Plaintiff's condition a year later.

As noted, the Commissioner bears the burden of developing the record. *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991).  The duty to further develop the record is triggered when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001).  Here the record contains ambiguous evidence that may be a major factor in determining whether Plaintiff is disabled.  In addition, after the ALJ reconsiders Dr. Schlievert's opinions and chart notes, the ALJ may find it necessary to pose a new hypothetical to the VE following clarification of Dr. Schlievert's opinion in order to determine whether Plaintiff is able to do any work that exists in the national economy.

Accordingly, the Court, on this record and in the exercise of its discretion, concludes this matter should be remanded to the Commissioner for further proceedings.

## CONCLUSION

For these reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter to the Commissioner for

further proceedings consistent with this Opinion.

IT IS SO ORDERED.

DATED this 6th day of August, 2012.

ANNA J. BROWN
United States District Judge